**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------

RYAN O'DELL,                                        :
                                                    :
                        Plaintiff,                  :     Civil Action No. 1:21-cv-7475
                                                    :
v.                                                  :
                                                    :     **COMPLAINT FOR VIOLATIONS OF**
MEDALLIA, INC., BORGE HALD, LESLIE                  :     **SECTIONS 14(a) AND 20(a) OF THE**
STRETCH, MITCH DAUERMAN, JAMES                      :     **SECURITIES EXCHANGE ACT OF**
D. WHITE, STAN MERESMAN, AMY                        :     **1934**
PRESSMAN, LESLIE KILGORE, DOUG                      :
LEONE, ROB BERNSHTEYN, and STEVE                    :     **JURY TRIAL DEMANDED**
WALSKE,                                             :
                                                    :
                        Defendants.                 :
--------------------------------------------------------

        Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon

information and belief, including investigation of counsel and review of publicly-available

information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal

knowledge:

        1.      This is an action brought by Plaintiff against Medallia, Inc. ("Medallia or the

"Company") and the members Medallia board of directors (the "Board" or the "Individual

Defendants" and collectively with the Company, the "Defendants") for their violations of Sections

14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with

the proposed acquisition of Medallia by Thoma Bravo, L.P. ("Thoma Bravo") and its affiliates.

        2.      Defendants have violated the above-referenced Sections of the Exchange Act by

causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A

(the "Proxy Statement") to be filed on September 3, 2021 with the United States Securities and

Exchange Commission ("SEC") and disseminated to Company stockholders.   The Proxy

Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Project Metal Merger Sub, Inc. ("Merger Sub"), a wholly owned subsidiary of Project Metal Parent, LLC ("Parent"), will merge with and into Medallia with Medallia surviving the merger and becoming a wholly owned subsidiary of Parent (the "Proposed Transaction"). Parent and Merger Sub are both affiliates of Thoma Bravo. Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement") each Medallia common share issued and outstanding will be converted into the right to receive $34.00 in cash (the "Merger Consideration").

3.      As discussed below, Defendants have asked Medallia stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the Company's financial forecasts and financial analyses conducted by the financial advisors of the Company, Morgan Stanley & Co. LLC ("Morgan Stanley") in support of its fairness opinion, and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

4.      It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Medallia stockholders or, in the event the

Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Plaintiff resides in this District.

## PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of Medallia common stock and has held such stock since prior to the wrongs complained of herein.

10.     Individual Defendant Borge Hald has served as a member of the Board since 2000 and is the Founder of the Company and Chairman of the Board.

11.     Individual Defendant Leslie Stretch has served as a member of the Board since 2018  and is the Company's President and Chief Executive Officer.

12.     Individual Defendant Mitch Dauerman has served as a member of the Board since. 2019

13.     Individual Defendant James D. White has served as a member of the Board since 2020.

14.   Individual Defendant Stan Meresman has served as a member of the Board since 2015.

15.   Individual Defendant Amy Pressman has served as a member of the Board since 2000.

16.   Individual Defendant Leslie Kilgore has served as a member of the Board since 2015.

17.   Individual Defendant Doug Leone has served as a member of the Board since 2011.

18.   Individual Defendant Rob Bernshteyn has served as a member of the Board since 2019.

19.   Individual Defendant Steve Walske has served as a member of the Board since 2011.

20.   Defendant Medallia is incorporated in Delaware and maintains its principal offices at 575 Market Street, Suite 1850, San Francisco, CA 94105.  The Company's common stock trades on the New York Stock Exchange under the symbol "MDLA."

21.   The defendants identified in paragraphs 10-19 are collectively referred to as the "Individual Defendants" or the "Board."

22.   The defendants identified in paragraphs 10-20 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A.   **The Proposed Transaction**

23.   GAIN Capital Holdings, Inc., together with its subsidiary, provides trading services and solutions to retail, institutional, and futures service customers worldwide. The company operates in two segments, Retail and Futures. It specializes in over-the-counter (OTC) and exchange-traded markets. The company offers access to a range of financial products, including

spot foreign exchange (forex) and precious metals trading; and spread bets and contracts for differences on currencies, commodities, indices, individual equities, bonds, options, and interest rate products, as well as OTC options on forex. It provides services to retail customers through FOREX.com and Cityindex.com, as well as through brokers and white label partners. The company offers execution and risk management services for exchange-traded futures and futures options on the United States and European futures and options exchanges; and online trading services. GAIN Capital Holdings, Inc. was founded in 1999 and is headquartered in Bedminster, New Jersey.

24.     On February 27, 2020, Medallia announced that they had entered into a proposed transaction:

> **SAN FRANCISCO**—Medallia, Inc. (NYSE: MDLA) ("Medallia"), the global leader in customer and employee experience, today announced that it has entered into a definitive agreement to be acquired by Thoma Bravo, a leading software investment firm, in an all-cash transaction that values Medallia at $6.4 billion. Through this transaction, Medallia will become a private company with additional resources and greater flexibility to build on its innovation leadership and expand its customer impact. Additionally, the transaction will allow Medallia to benefit from the operating capabilities, capital support and deep sector expertise of Thoma Bravo – one of the most experienced and successful software investors in the world.
>
> Under the terms of the agreement, Medallia shareholders will receive $34.00 per share in cash, which represents a premium of approximately 20% to Medallia's unaffected closing stock price on June 10, 2021, the last full trading day prior to media reports regarding a possible transaction, and a premium of approximately 29% to Medallia's unaffected 30-day average price.
>
> "Today's announcement underscores our commitment to constant innovation, expansion and value creation," said Leslie Stretch, President and CEO of Medallia. "Since becoming a public company in 2019, we have made significant progress bolstering our leadership position in experience management. Today, Medallia benefits from a differentiated portfolio of cloud technology solutions and an expansive, loyal customer base across a diverse set of industry

verticals and geographies. I look forward to our continued outstanding work in support of our customers. Furthermore, we are eager to build on our success and begin the next phase of differentiated growth, and we believe that becoming a private company represents the best opportunity to do just that. In addition to maximizing value for our shareholders, this transaction will enable us to execute on our long-term strategy with even greater effectiveness, efficiency and flexibility."

"Medallia has positioned itself at the forefront of the experience management market with a best-in-class SaaS platform that leverages proprietary AI to help companies better understand their customers and employees and drive meaningful business growth at scale," said Scott Crabill, a Managing Partner at Thoma Bravo. "Medallia's ability to provide personalized and predictive insights across every channel and to companies of all sizes has become mission-critical in a rapidly expanding universe of structured and unstructured data, where more and more business is transacted digitally. We look forward to partnering with Leslie and the talented Medallia team and applying our operational and investment expertise in software to support the company in the next phase of its growth journey."

"Medallia not only created the category of experience management but continues to re-define it through innovation, having built a unified, action-oriented platform with the most comprehensive signal capture technology on the market," said Peter Stefanski, a Principal at Thoma Bravo. "Medallia products are used extensively from the front line to the C-suite in enabling users to improve experiences in real-time with valuable data and insights. In a world where enterprises are only beginning to understand the power of using experience data to run their businesses, we are excited to support Medallia as it continues to capitalize on a massive, growing market opportunity."

**Transaction Details**

Following an unsolicited approach regarding an acquisition, the Medallia Board of Directors engaged in a robust strategic review process with the assistance of independent legal and financial advisors. This included an evaluation of Medallia's strategic plan as an independent company and other strategic alternatives. Following this process, the Medallia Board unanimously approved the transaction with Thoma Bravo, as it provides Medallia's shareholders with immediate and certain value.

Thoma Bravo has also entered into voting agreements with Medallia's directors and executive officers, and investment funds

affiliated with these individuals. Under these agreements, which represent approximately 34% of Medallia's outstanding shares, the applicable shareholders have agreed to vote in favor of the transaction, subject to certain terms and conditions contained therein.

The agreement includes a 40-day "go-shop" period expiring on September 4, 2021. During this period, Medallia, assisted by its legal and financial advisors will actively initiate, solicit and consider alternative acquisition proposals from third parties. The Medallia Board will have the right to terminate the merger agreement to enter into a superior proposal, subject to the terms and conditions of the merger agreement. There can be no assurance that this "go-shop" process will result in a superior proposal, and Medallia does not intend to disclose developments with respect to the solicitation process unless and until it determines that such disclosure is appropriate or otherwise required.

The transaction is expected to close in 2021, subject to customary closing conditions, including approval by Medallia shareholders and receipt of regulatory approvals. Upon completion of the transaction, Medallia's common stock will no longer be listed on any public market. Medallia will remain headquartered in San Francisco.

**Advisors**

Morgan Stanley & Co. LLC is serving as lead financial advisor to Medallia, and BofA Securities and Wells Fargo Securities are also serving as financial advisors. Wilson Sonsini Goodrich & Rosati, Professional Corporation is serving as Medallia's legal advisor. Kirkland & Ellis LLP is serving as legal advisor to Thoma Bravo. Debt financing for the transaction is being provided by Blackstone Credit, certain funds managed by affiliates of Apollo Capital Management, L.P., KKR Credit, Thoma Bravo Credit and Antares Capital.

\* \* \*

25.     The Board has unanimously approved the Proposed Transaction. It is therefore imperative that Medallia's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

B.      **The Materially Incomplete and Misleading Proxy Statement**

26.      On September 3, 2021, Medallia filed the Proxy Statement with the SEC in connection with the Proposed Transaction.  The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Medallia Financial Projections*

27.      The Proxy Statement fails to provide material information concerning financial projections by Medallia management and relied upon by Morgan Stanley in its analysis. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and the financial advisors with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Medallia management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

28.     For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Non-GAAP Operating Expenses, Non-GAAP EBIT, EBITDA, and Unlevered Free Cash Flow, but fails to provide line items used to calculate these metrics ***and/or*** a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

29.     When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

30.     The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

31.     Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Morgan Stanley's Financial Analysis*

32.     With respect to Morgan Stanley's *Public Trading Comparables Analysis*, the Proxy Statement fails to disclose the individual multiples and metrics for the companies observed by Morgan Stanley in the analysis.

33.     With respect to Morgan Stanley's *Discounted Equity Value Analysis*, the Proxy Statement fails to disclose: (i) estimated future net cash for the Company; (ii) the future-implied fully diluted equity value; (iii) the estimated fully diluted shares outstanding; (iv) the basis for applying the discount rate of 9.1%; and (v) Medallia's estimated cost of equity.

34.     With respect to Morgan Stanley's *Discounted Cash Flow Analysis* for the Company, the Proxy Statement also fails to disclose: (i) the projected terminal values for the Company; (ii) the inputs and assumptions underlying the use of perpetuity growth rates of 3.0% to 4.0%; (iii) the inputs and assumptions underlying the range of discount rates ranging from 7.7% to 9.6%; (iv) the Company's weighted average cost of capital.

35.     With respect to Morgan Stanley's *Selected Transactions Mutliples Analysis* for the Company, the Proxy Statement fails to disclose the time of announcement of each transaction observed in the analysis.

36.     With respect to Morgan Stanley's *Illustrative Precedent Transaction Premiums* analysis, the Proxy Statement fails to disclose: (i) the transactions observed by Morgan Stanley in the analysis; and (ii) the premiums of each transaction.

37.     With respect to Morgan Stanley's *Equity Research Analysts' Future Price Targets* analysis, the Proxy Statement fails to disclose: (i) the future public market trading price targets for the Company noted by Morgan Stanley that were published by equity research analysts; (ii) the equity research analysts observed; and (iii) the basis for using the discount rate of 9.1% to the range of analyst price targets.

38.     In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

39.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

40.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

41.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and

authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, financial analysis that were prepared by Morgan Stanley and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

42.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

43.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

44.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate

remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

45.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

46.     The Individual Defendants acted as controlling persons of Medallia within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Medallia, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Medallia, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

47.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

48.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Medallia, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue contains

the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

49.    In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

50.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

51.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

52.    Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A.    Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.      Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: September 7, 2021                   **MELWANI & CHAN LLP**

                                           By:   /s *Gloria Kui Melwani*
                                                 Gloria Kui Melwani (GM5661)
                                                 1180 Avenue of Americas, 8th Fl.
                                                 New York, NY 10036
                                                 Telephone: (212) 382-4620
                                                 Email: gloria@melwanichan.com

                                                 *Attorneys for Plaintiff*